**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE APPLICATION OF KATE O' KEEFFE TO ISSUE SUBPOENA FOR TAKING DEPOSITION OF PRODUCTION OF DOCUMENTS IN FOREIGN PROCEEDING. | Case No. 2:14-cv-01518-RFB-CWH<br><br>**ORDER** |

This matter is before the Court on Movants Las Vegas Sands Corp. ("LVSC"), Daniel J. Briggs ("Briggs"), and Ron Reese's ("Reese"), (collectively "movants"), motion to quash the subpoenas (doc. # 19), filed November 12, 2014. The Court also considered Rabbi Felipe Goodman's ("Rabbi Goodman") joinder to the instant motion (doc. # 27), filed November 21, 2014; movants' supplement to the motion (doc. # 32), filed November 25, 2014; Kate O' Keeffe's ("O' Keeffe") response (docs. # 38, # 39), filed December 8, 2014; and, movants' reply (doc. # 41), filed December 18, 2014.[1]

**BACKGROUND**

On September 18, 2014, O' Keeffe filed ex parte applications for a court order to obtain discovery for use in foreign proceedings pursuant to 28 U.S.C. § 1782(a). See Docs. # 1-5. Specifically, O' Keeffe sought an order authorizing subpoenas to: (1) LVSC; (2) Briggs, VP for Investor Relations at LVSC; (3) Reese, VP for Public Relations at LVSC; (4) Brian Clark, Litigation Support Manager for Lawyer Solutions Group LLC; and (5) Rabbi Goodman of the Temple Beth Sholom, Las Vegas. Id. According to O' Keeffe, the documents and other materials subpoenaed will be used in a lawsuit adjudicated in Hong Kong, People's Republic of China, to which she is a party.

---

[1] The Court notes it also reviewed O' Keeffe's notice of opinion and order (doc. # 42), filed February 10, 2015.

O' Keeffe explains that the discovery sought will aid in her defense against a libel claim filed by LVSC's Chairman and CEO, Sheldon G. Adelson ("Adelson"), alleging that an article authored by O' Keeffe and published by the U.S., European, and Asian editions of the Wall Street Journal falsely referred to him as "foul-mouthed." Doc. # 1 at 3. O'Keeffe asserts that the subpoenaed parties have relevant information demonstrating Adelson's "tendency to use foul or otherwise offensive language." Id. at 6. The Court granted O' Keeffe's applications on October 21, 2014, but noted that the subpoenaed parties could file a motion to quash. See Doc. # 18; see also Docs. # 1-5. Thereafter, movants filed the instant motion. See Doc. # 19.

## DISCUSSION

**1.     Legal Standard**

A district court may grant an application pursuant to 28 U.S.C. § 1782 if: (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or internal tribunal or any interested person. 28 U.S.C. § 1782(a); see also In re Republic of Ecuador, No. 3:10-80225-CRB-EMC, 2010 WL 3702427, at *2 (N.D. Cal. Sep. 15, 2010). However, although a court has the authority under § 1782 to grant an application, it is not required to do so. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). The U.S. Supreme Court identifies several factors that a court should take into consideration when ruling on a § 1782 application: (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent § 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. In re Republic of Ecuador, 2010 WL 3702427, at *2 (citing Intel Corp., 542 U.S. at 264-65).

If a district court grants a § 1782 application, the subpoenaed party can move to quash the subpoena, but bears the burden of persuasion in the course of civil litigation. See In re Ex Parte Apple Inc., No. MISC 12-80013 JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012); see also Heraeus

Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 597 (7th Cir. 2011) ("Once a section 1782 applicant demonstrates need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives.").

**2.    Analysis**

This Court previously concluded it had the legal authority to grant O' Keeffe's ex parte applications for subpoenas. See Doc. # 18. The Court noted in its order that: (1) the subpoenaed parties reside in this district, (2) the discovery would be of use in the Hong Kong litigation, and (3) the application is brought by O' Keeffe, a party to that litigation. Id. Movants do not dispute that this Court has discretion to grant a § 1782 application. Instead, movants contend the second, third, and fourth Intel factors weigh in favor of granting their motion to quash.[2]

**a.    Second Intel Factor: Receptivity of the Hong Kong Court to U.S. Federal Court Jurisdictional Assistance**

Movants contend the subpoenas should be quashed because O' Keeffe allegedly "bypassed" Hong Kong law and procedures governing discovery by failing to request the assistance of the Hong Kong Court to obtain the requested discovery, which casts doubt on the usefulness of the requested discovery and the Hong Kong Court's receptivity to admitting into evidence that discovery. Doc. # 19 at 5 (citing, among others, In re PIC Do Nordeste, LTDA, No. 12-50624, 2012 WL 4448886 (E.D. Mich. Sep. 25, 2012)). In support, movants present the expert opinion of Malcolm Bernard Kemp ("Kemp"), a Hong Kong solicitor and partner at the law firm of Stephenson Hardwood. See Doc. # 32-1 at 1. According to Kemp, O' Keeffe's discovery applications: (1) improperly seek to circumvent Hong Kong procedural law and rules governing discovery from a non-party by failing to request the assistance of the Hong Kong Court; (2) are "premature" because the pleading stage has not yet closed in the Hong Kong litigation; (3) improperly seek pretrial oral testimony outside the presence of a jury, which is generally not permitted in Hong Kong civil actions; (4) improperly seek documentary evidence using a deposition subpoena; (5) fail to identify specific documents sought in violation of

---

[2] Because movants concede that the first Intel factor applies in the instant case, the Court limits its discussion to only the second, third, and fourth Intel factors, which are in dispute.

Hong Kong procedural rules; and (6) improperly seek to conduct discovery without the oversight of a Hong Kong examiner. Id. at 13-19.

In response, O' Keeffe argues that movants mischaracterize the second Intel factor as contemplating the Hong Kong Court's receptivity to "receiv[ing]" or admitting the discovery sought when the second factor actually contemplates the Hong Kong Court's receptivity to "U.S. federal-court jurisdictional assistance." Doc. # 38 at 7 (citing Intel, 542 U.S. at 264-65). O' Keeffe next argues that the Ninth Circuit, among others, has held that § 1782 does not require the discovery sought to be discoverable or admissible in the foreign tribunal. Id. at 8 (citing, among others, Advanced Micro Devices, Inc. v. Intel Corp., 292 F.3d 664, 668 (9th Cir. 2002) aff'd, 542 U.S. 241 (2004)). O' Keeffe adds that while movants urge this Court to consider admissibility despite the absence of such a requirement under § 1782, the Second Circuit already considered and rejected that same argument in Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 83 (2d Cir. 2012).

Like movants, moreover, O' Keeffe presents the opinion of an expert from Hong Kong, Kathryn Sara Hippolyte Sanger ("Sanger"),[3] to oppose Kemp's affidavit. According to Sanger, O' Keeffe's discovery applications: (1) are proper because O' Keeffe was not required to use or exhaust Hong Kong laws and procedures before submitting her applications to this Court; (2) are not premature because they are not contingent on closure of the pleadings stage in the Hong Kong litigation; (3) are proper because there is no strict requirement for oral evidence before a Hong Kong jury; (4) comport with Order 39 of the Rules of the High Court of the Hong Kong Special Administrative Region ("Order 39), which contemplates that a party will seek both witness and documentary evidence; (5) do not violate Hong Kong law and procedure because the applications specifically identify the "relevant" documents sought; and (6) are proper even without appointment of a Hong Kong examiner because this is not a strict requirement under Order 39. See Doc. # 38-1 at 4-15.

O' Keeffe explains that Hong Kong law "expressly" allows discovery using foreign procedures, including § 1782, as evidenced not only by Order 39, but the commentary and notes from Hong Kong Civil Procedure 2015. Doc. # 38 at 9 (citing Doc. # 19-1 at 56-60; Doc. # 38-1 at 1-15; Doc. # 39-1 at 2-13). With respect to the commentary and notes, O' Keeffe points out they state that a Hong Kong

---

[3] Sanger serves as "consultant" for the Clifford Chance law firm in Hong Kong. See Doc. # 38-1 at 1.

court will "not restrain" a litigant from obtaining pre-trial discovery from a foreign country, citing to South Carolina Insurance Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V. [1987] A.C. 24, a case in which the English House of Lords set aside an injunction restraining a party from utilizing § 1782. O' Keeffe argues that while Kemp suggests that South Carolina's procedural posture is different from the instant case, litigants in South Carolina sought U.S. discovery under § 1782 after the U.K. cases were commenced but before pleadings in the U.K. action were closed, just as O' Keeffe did here. O' Keeffe also points out that while Kemp suggests § 1782 should be allowed only when the evidence sought is unobtainable and/or inadmissible in the foreign jurisdiction, this suggestion is spurious, especially when one considers that while South Carolina was decided at a time when discovery against third parties was inadmissible, such non-party discovery is now permissible in Hong Kong. Indeed, O' Keeffe points out that movants concede a litigant need not exhaust procedures in the foreign tribunal to obtain discovery under § 1782, and while movants urge this Court to find that she can seek discovery only through the Hong Kong Court, O' Keeffe claims this notion is at odds with the goal of § 1782 to "provid[e] equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." Id. at 11-12 (citing Doc. # 19 at 7; S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3783). O' Keeffe then points out that movants turn to "inapt" authority because the courts in the cases movants cite denied the discovery requests either because the foreign tribunal explicitly opposed such requests, or the non-parties subject to the requests in the U.S. were not American citizens. O' Keeffe further asserts that § 1782 has previously been applied by U.S. courts to authorize discovery in matters such as the instant Hong Kong litigation, and litigants need not show they would succeed in obtaining the discovery if sought through a foreign tribunal such as this Court. Id. at 10-12 (citing, among others, In re Mak, No. C 12-80118 SI, 2012 WL 2906761 (N.D. Cal. Jul. 16, 2012); John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 136 (3d Cir. 1985)).

In reply, movants restate their earlier assertions. Movants also contend this Court should disregard Sanger's declaration because Sanger represents O' Keeffe in the Hong Kong litigation, which undermines her credibility and objectivity in this case. Moreover, movants contend that O' Keeffe "hide[s] the fact" that this Court has discretion to deny the requested discovery. Doc. # 41 at

1 4. Movants further contend that the Court may consider foreign admissibility as one of many factors in exercising its discretion to deny O' Keeffe's applications.

As a preliminary matter, movants contend the discovery sought should have been requested by or through the Hong Kong Court. However, in recognizing that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions–reasons that do not necessarily signal objection to aid from the United States federal courts," the U.S. Supreme Court anticipated movants' concern and, nevertheless, found that the objectives of § 1782 compelled discovery even when a litigant, and not the foreign tribunal, requests such discovery. Intel, 542 U.S. at 261-62. Moreover, courts that have directly addressed this question of a "quasi-exhaustion requirement" reject the notion based on, among others, § 1782's explicit statement that "upon application of any interested person," a district court may order a person from whom discovery is sought to "give his [or her] testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." See 28 U.S.C. § 1782 (emphasis added); Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992). Indeed, this "allowance of liberal discovery seems entirely consistent with the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." Advanced Micro Devices, 292 F.3d at 669. Given such, O' Keeffe was not required to request discovery through the Hong Kong Court.

Movants next raise admissibility and discoverability issues concerning O' Keeffe's discovery requests. However, the issues movants raise are contrary to law. The Ninth Circuit previously rejected any requirement that a party show, or a court consider, that the discovery sought be admissible or discoverable in foreign proceedings, holding that neither the plain language, nor legislative history and amendments of § 1782 required such. See Advanced Micro Devices, 292 F.3d at 668-69 ("We have previously rejected a requirement regarding admissibility in the foreign tribunal.... [and] [f]or good and sound policy reasons, we now reject such a requirement with respect to discoverability"); see also In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea, 555 F.2d 720, 723 (9th Cir. 1977) ("In our judgment our federal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to... the admissibility

before such tribunals of the testimony or material sought."); see also John Deere, 754 F.2d at 136 (noting the Ninth Circuit has held that federal courts should not determine "the admissibility before... [foreign] tribunals of the evidence sought") (citing In re Request for Judicial Assistance from Seoul Dist. Criminal Court, 555 F.2d at 723 and In re Letters Rogatory from the Tokyo District, Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976)).  Indeed, the Ninth Circuit observed that if Congress wished to impose such requirements on § 1782 applicants, it could easily have done so by including statutory language to that effect.  See Advanced Micro Devices, 292 F.3d at 669.  Importantly, moreover, the U.S. Supreme Court, in Intel, affirmed the Ninth Circuit's decision in Advanced Micro Devices, concluding that § 1782 does not impose a "foreign-discoverability" requirement on applicants.  See Intel, 542 U.S. at 260-61.  Consequently, the law is clear as to these questions, and movants' attempt to raise issues already put to rest by the Ninth Circuit and U.S. Supreme Court is not well-taken.

Movants also cite cases in which courts denied § 1782 requests.  None of the cases cited are binding on this Court.  The cases are also inapplicable, as they are distinguishable from the instant case.  See e.g., Nordeste, 2012 WL 4448886 (Brazilian applicant sought to use § 1782 to obtain documents in Brazil for use in Brazil); In re Microsoft Corp., 428 F. Supp. 2d188 (S.D.N.Y. 2006) (foreign tribunal wrote a letter opposing applicant's discovery requests); In re Chevron Corp., 762 F. Supp. 2d 242, 252 (D. Mass. 2010) (district court noted that only a jurisdictional issue was before the foreign tribunal, and the court was not convinced the discovery sought under § 1782 concerned that issue).  Here, O' Keeffe is an American citizen seeking discovery from U.S.-based witnesses, and the Hong Kong Court has not expressed any opposition to O' Keeffe's discovery requests.  Furthermore, this Court finds, and movants do not dispute, the relevance of the requested discovery to the libel claim in the Hong Kong litigation.

Finally, movants submit Kemp's affidavit to show that the discovery requests raise issues under Hong Kong law and procedure, with O' Keeffe presenting Sanger's affidavit to rebut Kemp's assertions.[4]  However, the diametrically opposing views of both experts on the same issues renders

---

[4] The expert affidavits were not organized by Intel factors.  Thus, some of the expert opinions relate to both the second and third Intel factors.

7

1 impossible a determination as to whose international legal expert correctly characterizes Hong Kong
2 law and procedure. Fortunately, the Court need not resolve these competing interpretations of Hong
3 Kong law and procedure. See Euromepa, S.A. v. R. Emerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995)
4 ("The record reveals that this litigation became a battle-by-affidavit of international legal experts...
5 [W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal
6 judges."). This Court must simply determine whether "authoritative proof" exists that the Hong Kong
7 Court "would reject evidence obtained with the aid of section 1782." Id. at 1099-1100 (emphasis
8 added). Because neither Kemp's and O' Keeffe's affidavits, nor movants and O' Keeffe's assertions
9 and supplements, constitute "authoritative proof" that the requested discovery would be unwelcome
10 to the Hong Kong Court, there is no reason for this Court to exercise its discretion to deny O' Keeffe's
11 discovery applications. Consequently, the Court finds that the second Intel factor does not weigh in
12 favor of quashing O' Keeffe's subpoenas.

### b. Third Intel Factor: Circumventing the Hong Kong Court's Proof-Gathering Restrictions or Policies

Movants argue that O' Keeffe's applications are simply a means to circumvent the Hong Kong Court's proof-gathering procedures or policies since O' Keeffe never sought assistance from the Hong Kong Court to obtain the requested discovery. Because the basis upon which movants rely in asserting the third Intel factor has already been rejected by this Court,[5] movants' assertion under the third Intel factor necessarily fails. Thus, the Court finds that this factor does not weigh in favor of quashing O' Keeffe's subpoenas.

### c. Fourth Intel Factor: Unduly Intrusive or Burdensome Requests

Movants also contend that the subpoenas should be quashed because they contain unduly intrusive and burdensome requests, and amount to an "improper fishing expedition" simply designed to turn the Hong Kong litigation into a "sensationalist spectacle." Doc. # 19 at 8.

O' Keeffe, in opposition, denies that the subpoenas contain unduly intrusive or burdensome requests, pointing out that movants fail to specify which requests are intrusive, burdensome, or meritless. Further, per O' Keeffe, the subpoenas are "hardly a fishing expedition," but narrowly

---

[5] See the Court's discussion under the second Intel factor.

tailored and targeted to the issues of Adelson's use of foul or offensive language, and motive in suing O' Keeffe. Doc. # 38 at 19. In support, O' Keeffe points out that she asked: (1) LVSC to produce documents, interview transcripts, and audio and video recordings of Adelson using foul or offensive language; (2) Rabbi Goodman to discuss incidents in which Adelson used foul or offensive language in the rabbi's presence, the tensions between the rabbi and Adelson, and the rabbi's involvement in the Hong Kong litigation;[6] and (3) Reese and Briggs to provide testimony and documents describing Adelson's use of foul or offensive language, the damage control administered due to Adelson's use of foul or offensive language, and those communications regarding O' Keeffe, the article in suit, or the Wall Street Journal's coverage of Adelson. Movants did not reply to O' Keeffe's assertions.

It is unclear to this Court how and why O' Keeffe's subpoenas are "obviously fishing" or unduly intrusive and burdensome, especially since movants fail to point to any sections of the subpoenas and explain how or why any of the requests are unduly intrusive, burdensome, or amount to a fishing expedition. As such, this Court finds that the fourth Intel factor also does not weigh in favor of quashing O' Keeffe's subpoenas.

## CONCLUSION AND ORDER

Based on the foregoing and good cause appearing therefore, **IT IS HEREBY ORDERED** that movants' motion to quash the subpoenas (doc. # 19) is **denied**.

DATED: March 24, 2015

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**

---

[6] According to O' Keeffe, Rabbi Goodman provided an affidavit in support of Adelson in the Hong Kong litigation.

9