**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE APPLICATION OF KATE O'KEEFFE TO ISSUE SUBPOENA FOR TAKING DEPOSITION OF PRODUCTION OF DOCUMENTS IN FOREIGN PROCEEDING. | Case No. 2:14-cv-01518-RFB-CWH  **ORDER** |

This matter is before the Court on Kate O'Keeffe's ("O'Keeffe") motion for issuance of subpoena re: discovery (doc. # 53), filed January 7, 2016, Objector Venetian Casino Resort, LLC's ("Venetian") response (doc. # 55), filed January 25, 2016, and O'Keeffe's reply (doc. # 56), filed February 4, 2016. Also before the Court are O'Keeffe's notices (docs. # 59, # 61), filed on February 23, 2016 and March 18, 2016.

**BACKGROUND**

On September 18, 2014, O'Keeffe filed ex parte applications for a court order to obtain discovery for use in foreign proceedings pursuant to 28 U.S.C. § 1782(a). See Docs. # 1-5. According to O'Keeffe, the documents and other materials subpoenaed will be used in a lawsuit adjudicated in Hong Kong, People's Republic of China, to which she is a party. O'Keeffe explains that the discovery sought will aid in her defense against a libel claim filed by Las Vegas Sands Corporation's ("LVSC") Chairman and CEO, Sheldon G. Adelson ("Adelson"), alleging that an article authored by O'Keeffe and published by the U.S., European, and Asian editions of the Wall Street Journal falsely referred to him as "foul-mouthed." Doc. # 1 at 3. O'Keeffe asserts that the subpoenaed parties have relevant information demonstrating Adelson's "tendency to use foul or otherwise offensive language." Id. at

6. The Court granted O'Keeffe's applications on October 21, 2014, but noted that the subpoenaed parties could file motions to quash. See Doc. # 18. Thereafter, the subpoenaed parties filed a joint motion to quash, which the Court denied, finding that the subpoenas satisfied the requirements of 28 U.S.C. § 1782 and Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). See Doc. # 19; Doc. # 43.

On January 7, 2016, O'Keeffe filed a motion to subpoena Jonathan Allan Molnar ("Molnar"), who served as Adelson's security guard from 2008 to 2013, to produce documents and appear at a deposition for questioning. See Doc. # 53. The Venetian filed an opposition, to which O'Keeffe filed a reply. See Doc. # 55; Doc. # 56. The parties subsequently appeared before this Court for a hearing on February 29, 2016, after which the Court took the matter under submission. See Doc. # 60.

## DISCUSSION

### 1. Legal Standard

A district court may grant an application pursuant to 28 U.S.C. § 1782 if: (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or internal tribunal or any interested person. 28 U.S.C. § 1782(a); see also In re Republic of Ecuador, No. 3:10-80225-CRB-EMC, 2010 WL 3702427, at *2 (N.D. Cal. Sep. 15, 2010). However, although a court has the authority under § 1782 to grant an application, it is not required to do so. Intel, 542 U.S. at 264. The U.S. Supreme Court identifies several factors that a court should take into consideration when ruling on a § 1782 application: (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent § 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. In re Republic of Ecuador, 2010 WL 3702427, at *2 (citing Intel, 542 U.S. at 264-65).

//

If a district court grants a § 1782 application, the subpoenaed party can move to quash the subpoena, but bears the burden of persuasion in the course of civil litigation. See In re Ex Parte Apple Inc., No. MISC 12-80013 JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012); see also Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 597 (7th Cir. 2011) ("Once a section 1782 applicant demonstrates need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives.").

**2.    Parties' Arguments**

The Venetian does not dispute that O'Keeffe's application satisfies § 1782 and the Intel factors. However, the Venetian asks the Court to deny the application because the information sought is purportedly subject to the terms of a confidentiality agreement that prohibits Molnar from disclosing any information or documents regarding Adelson or Molnar's former employment with the Venetian, a subsidiary of LVSC.[1] The Venetian explains that Rule 45 of the Federal Rules of Civil Procedure ("FRCP") requires this Court to quash the subpoena because it would mean "disclosure of privileged or other protected matter[s]" that fall under the agreement. Doc. # 55 at 4 (citing, among others, Fed. R. Civ. P. 45(d)(3)(A) and Insulate Am. v. Masco Corp., 227 F.R.D. 427, 434 (W.D.N.C. 2005)). The Venetian also points out that the agreement provides an automatic remedy in the form of a preliminary injunction to prevent Molnar's breach of the agreement. The Venetian then points out that the instant application purportedly fails to identify O'Keeffe's counsel that obtained information from Molnar, the context of Molnar's statements, an affidavit or sworn statement from Molnar, and other information that would allow the Court to determine the "probative value" of Molnar's testimony. Id. at 6. The Venetian further contends that the "only reason" O'Keeffe obtained any relevant information

---

[1] The Venetian cites to the following provisions of the confidentiality agreement: "It is further specifically understood and agreed that the Employee will make no disclosure, whether during or subsequent to the term of the Employee's Employment by Employer, of any information, confidential or otherwise, including but not limited to the identity, addresses, conversations, meetings, events, affairs, or all other matters, respecting Sheldon G. Adelson or his family, relatives, [or] business interests..." Doc. # 55 at 5 (citing Doc. # 55 at 10-12)).

"The employee hereby further agrees to maintain in trust, as Employer's property, all documents and other data concerning Employer and its affairs, employees, principals, directors, officers..., including his own work papers of any kind including telephone directories and notes, and any and all copies thereof in his possession or under his control... It is specifically understood and agreed that no disclosure of any information, confidential or otherwise, including but not limited to the identity, address, conversations, or other matters, may ever be made with respect to Employee's Employer..." Id.

3

from Molnar was through the confidentiality agreement at issue, which purportedly suggests that O'Keeffe improperly induced Molnar to breach the agreement in violation of Nevada law governing intentional interference with contractual relations. Id. at 6 (citing J.J. Industries, LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003)).

O'Keeffe, in response, argues that the Venetian erroneously asserts the existence of an overly-broad confidentiality agreement that would preclude discovery despite "a substantial body of authority" holding that documents and other information are not immune from discovery merely because an agreement exists requiring confidentiality. Doc. # 56 at 7 (citing, among others, Church v. Dana Kepner Co., No. 11-cv-02632-CMA-MEH, 2013 WL 24437, at * 3-4 (D. Colo. Jan. 2, 2013)). O'Keeffe next argues that contrary to the Venetian's assertion regarding Rule 45 of the FRCP, "it is well settled that a concern for protecting confidentiality does not equate to privilege, and that [the requested] information and documents are not shielded from discovery on the sole basis that [ ] they are confidential." Id. at 7 (citing, among others, Sonnino v. Univ. of Kansas Hosp. Auth., 220 F.R.D. 633, 642 (D. Kan. 2004)). O'Keeffe adds that courts have generally held that confidentiality concerns can easily be addressed through a protective order or "other measures short of quashing the subpoena." Id. at 10 (citing, among others, Southwest Reg'l Council of Carpenters v. McCarron, No. CV14-2762-PA (JCX), 2014 WL 10917114, at *1-3 (C.D. Cal. Dec. 5, 2014)). O'Keeffe then argues that she would be open to having a protective order in this case, but does not know if Molnar possesses any company documents or will be represented by counsel, and suggests that either Molnar's counsel or this Court review any documents that might be subject to a protective order.

O'Keeffe also argues that the Venetian neither asserts an applicable privilege, nor demonstrates potential injuries or prejudice that would result from Molnar's deposition and, as such, Molnar may answer questions about his employment. Id. at 11 (citing Kalinauskas v. Wong, 151 F.R.D. 363, 366-67 (D. Nev. 1993)). O'Keeffe next points out that the authority cited by the Venetian are readily distinguishable because the cases involve actual confidential or proprietary information, whereas this case involves non-confidential information that is subject to a non-disclosure agreement. According to O'Keeffe, moreover, courts have refused to allow a party to prevent discovery regarding matters that a party put directly in issue, especially in cases where the opposing party bears the burden of establishing "truth." Id. at 12-13 (citing Condit v. Dunne, 225 F.R.D. 100, 108-09 (S.D.N.Y. 2004)).

4

1  O'Keeffe then argues that the Venetian "disingenuously" fails to mention a provision in the agreement
2  that excepts judicially compelled discovery,[2] and disregards the fact that it has been given an
3  opportunity by this Court to oppose disclosure of the limited categories of information O'Keeffe seeks.
4  O'Keeffe further argues that the Venetian's insistence on an affidavit and other information relating
5  to Molnar finds no support in law and is actually contrary to case law. Id. at 12.

6  At oral argument, the Venetian points to the distinction between private and public
7  conversations that may have been overheard by Molnar in the course of his duties as a bodyguard, and
8  questions the relevance, scope, and admissibility of the information sought by O'Keeffe from Molnar.
9  In addition, the Venetian contends that if Molnar presents documents other than his termination
10 agreement at the deposition, then those documents would have been "stolen" from the company. The
11 Venetian therefore suggests that, if Molnar presents any such documents, an in camera review should
12 be conducted by the Court or O'Keeffe should forward the documents to opposing counsel for review
13 to ensure that any confidential information is properly protected.

14 Also at oral argument, and filed in a notice, O'Keeffe argues that Judge James C. Mahan
15 ("Judge Mahan") already decided the question of whether a temporary restraining order or preliminary
16 injunction should issue to prevent the deposition of a former employee bound by a confidentiality
17 agreement. O'Keeffe adds that Molnar went with Adelson on business meetings, which is why
18 O'Keeffe believes that Molnar would have information relating to the Hong Kong litigation. As to the
19 Venetian's accusations directed at O'Keeffe's counsel, O'Keeffe and counsel deny any wrongdoing,
20 explaining that they were not aware of a confidentiality agreement between Molnar and the Venetian,
21 and only learned of Molnar because he was previously involved in a lawsuit with Adelson. Lastly,
22 O'Keeffe asks to be allowed to move forward with the deposition once the Court grants the instant
23 request, even if the Venetian files objections to the Court's order.

24 //

---

[2] O'Keeffe cites to the following provision of the confidentiality agreement: "If the employee... nonetheless is legally compelled to disclose Confidential Information to any tribunal or else would stand liable for contempt or suffer other censure or penalty, the Employee may, without liability herein, disclose to such tribunal only that portion of the Confidential Information which the Employee is legally required to disclose, provided that the Employee exercises his best efforts to preserve the confidentiality of the Confidential Information, including, without limitation, by cooperating with the Employer to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information by such tribunal." Doc. # 56 at 9 (citing Doc. # 55 at 11).

**3.     Analysis**

    **a.     § 1782 and Intel Factors**

Because the parties do not dispute that O'Keeffe's current application satisfies the statutory requirements of § 1782 and the Intel factors, and a review of the application reveals that it meets these requirements, this Court limits its discussion to only those issues and arguments presented by the parties in their briefs and at oral argument.

    **b.     Confidentiality Agreement**

The Court first rejects the Venetian's assertion that the confidentiality agreement between Molnar and the Venetian precludes Molnar from providing responsive information to O'Keeffe's subpoena. Confidentiality agreements do not bar discovery, and a general interest in protecting confidentiality does not equate to privilege. See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co., No. CIV. CCB-03-3408, 2012 WL 628493, at *2 (D. Md. Feb. 24, 2012) ("There is no privilege for documents merely because they are subject to a confidentiality agreement, and confidentiality agreements do not necessarily bar discovery that is otherwise permissible and relevant."); Sonnino v. Univ. of Kansas Hosp. Auth., No. CIV.A.02-2576-KHV-DJ, 2004 WL 769325, at *3 (D. Kan. Apr. 8, 2004) ("Parties cannot create a privilege against civil discovery by mere written agreement" and "litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement."); Zoom Imaging, L.P. v. St. Luke's Hosp. & Health Network, 513 F. Supp. 2d 411, 417 (E.D. Pa. 2007) (confidentiality agreements do not preclude disclosure for purposes of discovery); Young v. State Farm Mut. Auto. Ins. Co., 169 F.R.D. 72, 77–80 (S.D.W.Va.1996) (same); United States v. Davis, 702 F.2d 418, 422 (2d Cir.1983) (same); Grumman Aerospace Corporation v. Titanium Metals Corp. of Am., 91 F.R.D. 84, 87 (E.D.N.Y.1981) (same); see also Kalinauskas v. Wong, 151 F.R.D. 363, 367 (D. Nev. 1993) (noting "liberal nature" of discovery and clause in confidential settlement agreement providing for judicially compelled discovery, thereby allowing deposition of former employee); Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 923 (D. Nev. 2006) ("[confidentiality] agreements might not be enforceable... if the agreement is being used by one party within the context of litigation to suppress an adverse party's access to evidence..."); Federal Open

Market Committee of the Federal Reserve System v. Merrill, 443 U.S. 340, 362 (1979) ("As with most evidentiary and discovery privileges recognized by law, there is no absolute privilege for trade secrets and similar confidential information."). As such, Molnar's confidentiality agreement with the Venetian is not a valid basis for withholding discovery in this case, and the information and documents O'Keeffe seeks are not shielded from disclosure merely because they have been designated as "confidential" in an agreement.

The Court also notes that the "Forced Disclosure" clause of the agreement explicitly recognizes that Molnar may, by "oral questions, interrogatories, requests for information or documents in legal proceedings, [and] **subpoena[s]**..." be "legally compelled to disclose Confidential Information to any tribunal." Doc. # 55 at 11 (emphasis added). This provision indicates that the agreement contemplates disclosure in the instant context and that the Court has authority to order disclosure. See Kalinauskas, 151 F.R.D. at 367 (considers clause in confidential settlement agreement providing for judicially compelled discovery in allowing deposition of former employee).

With respect to any "privacy" or "confidential" privilege, moreover, the Court notes that courts in this and other circuits have refused to allow a party to invoke the privilege to prevent discovery regarding matters that a party places in controversy, finding that a party waives the privilege by seeking damages for the alleged injuries. The reasoning behind these decisions lies mainly in the fairness (or unfairness) of allowing a defamation plaintiff, for instance, to pursue an action for damages while simultaneously withholding discovery of materials that might disprove or undermine that plaintiff's assertions. See e.g., Sw. Reg'l Council of Carpenters v. McCarron, No. CV14-2762-PA (JCX), 2014 WL 10917114, at *2 (C.D. Cal. Dec. 5, 2014); Doe v. City of Chula Vista, 196 F.R.D. 562, 569-70 (S.D. Cal. 1999); see also Egiazaryan v. Zalmayev, No. 11 CIV. 2670 PKC GWG, 2012 WL 137574, at *2 (S.D.N.Y. Jan. 12, 2012); Longmire v. Alabama State Univ., 151 F.R.D. 414, 419 (M.D. Ala. 1992). The Court is persuaded by this body of case law and finds that it would be fundamentally unfair to deprive O'Keeffe of the discovery she seeks.

Further, discovery is proper here because, under the Venetian's expansive theory of privacy or confidentiality, there would be no need for any privilege, including discovery and evidentiary privileges concerning information and documents, as persons receiving discovery requests could obtain

relief from disclosure and foreclose deposition questions about conversations relevant to claims and defenses by simply designating information and materials as "private" or "confidential." The Venetian's theory, carried to its logical conclusion, would leave little that could not be designated as off-limits under a doctrine that recognized as binding an agreement that conversations and documents remain confidential. This Court declines to adopt such a rule, especially since it would allow "parties to freely withhold information and documents from disclosure, and to randomly police discovery based on arbitrary perceptions... without justification or notice." See Kelley v. Smith's Food & Drug Centers, Inc., No. 2:14-CV-00856-RCJ, 2014 WL 6474026, at *4 (D. Nev. Nov. 19, 2014). As such, the Court finds that the confidentiality agreement between Molnar and the Venetian does not preclude O'Keeffe from obtaining the information she seeks.

   **c. Relevance, Scope, and Admissibility**

The Court next rejects the Venetian's assertion that the requested information is irrelevant, out of scope, and inadmissible. Rule 45 of the FRCP sets forth the duties and obligations of parties issuing subpoenas. Fed.R.Civ.P. 45(d)(3)(A). Courts consider various factors in deciding motions to quash or modify a subpoena, including the breadth or specificity of the discovery request, and the relevance of the requested information. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005). In determining relevance, a court is guided by Rule 26, which is incorporated by Rule 45, and states that discovery may be obtained "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b)(1); In re Subpoena of DJO, LLC, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (discovery standards under Rule 26 are incorporated by Rule 45). Where, as here, the relevance of the information sought is called into question, a court considers whether the information "bears on, or reasonably could lead to other matters that could bear on, any issue that may be in the case." O'Shea v. Am. Solar Sol., Inc., No. 14CV894-L (RBB), 2016 WL 701215, at *2 (S.D. Cal. Feb. 18, 2016).

Upon review, the Court finds that the discovery sought is clearly relevant and within the scope of O'Keeffe's defense against Adelson's libel claim. Specifically, any information or evidence obtained from Molnar that would show Adelson's "tendency to use foul or otherwise offensive language" is relevant and within the scope of O'Keeffe's defense showing the truth of her description

of Adelson as "foul mouthed." Doc. # 1 at 3, 6. Given such, the Court finds that the Venetian's fleeting, unsupported, and conclusory assertion regarding the subpoena's purported irrelevance and lack of scope fails to meet the "heavy burden" the Venetian must show for discovery to be denied in this case. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

The Court also finds that any distinction between private and public conversations that Molnar may have overheard in the course of his duties is a question of admissibility, and properly before the Hong Kong court. The Venetian is reminded that this Court need not consider whether the discovery sought be admissible or discoverable in Hong Kong, as explained in this Court's prior order in this action. See In re O'Keeffe, No. 2:14-CV-1518-RFB, 2015 WL 1308546 (D. Nev. Mar. 24, 2015).

### d. Injunction

The Court also rejects the Venetian's assertion that it is entitled to an automatic injunction that would prevent Molnar's deposition by virtue of the existence of the confidentiality agreement at issue. In this district, Judge Mahan rejected a similar contention and denied applications for a temporary restraining order and preliminary injunction that would prevent Adelson's former chauffeur from being deposed, finding any alleged harms too speculative to warrant relief. See Interface Operations, LLC v. Kwame Luangisa, No. 2:16-cv-00280-JCM-CWH (D. Nev. Feb. 22, 2016). Given such, the Court finds that the Venetian is not entitled to an automatic injunction.

### e. Other Issues

The Court agrees with O'Keeffe that the Venetian fails to cite any authority in support of its demand for a sworn affidavit, along with other information, relating to Molnar and therefore will not instruct O'Keeffe to satisfy these requirements. The Court also finds no evidence that O'Keeffe or her counsel engaged in misconduct in violation of Nevada law. Indeed, at oral argument, O'Keeffe's counsel made clear that her team knew nothing of a confidentiality agreement between Molnar and the Venetian, and only learned of Molnar's identity because he had previously been involved in a lawsuit with Adelson. The Court therefore concludes that there were no failures on the part of O'Keeffe or her counsel.

//
//

### f. Protective Order

The parties appear to agree that entering a protective order is appropriate in anticipation of any disclosures that might involve confidential commercial information. The Court therefore directs the parties to meet and confer, and submit a proposed protective order no later than April 18, 2016.

### g. Molnar's Deposition

O'Keeffe asks to be allowed to move forward with the deposition once the Court grants the instant motion, even if the Venetian files objections to this Court's order. The Court sees no reason why O'Keeffe cannot proceed immediately with Molnar's deposition, as the "filing of objections to a magistrate judge's order on a non-dispositive matter does not stay the order's operation." De Leon v. CIT Grp. Inc., No. 2:11-CV-01028-PMP, 2013 WL 950527, at *1 (D. Nev. Mar. 11, 2013) (citing Oracle America, Inc. v. Google, Inc., 2011 WL 3794892, at *5 n.7 (N.D. Cal. Aug. 26, 2011); In re Air Crash at Taipei, Taiwan on October 31, 2000, 2002 WL 32155477, *5 (C.D. Cal. Oct. 23, 2002)).

Based on the foregoing, the Court grants O'Keeffe's request.

## CONCLUSION AND ORDER

Accordingly, **IT IS HEREBY ORDERED** that O'Keeffe's motion for issuance of subpoena re: discovery (doc. # 53) is **granted**.

**IT IS FURTHER ORDERED** that the parties shall file a proposed protective order for this Court's review **no later than April 18, 2016**.

DATED: April 4, 2015

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**